IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JOEL MCCLEASE, | ) | |
| JOHN BODDORF, and | ) | |
| MALCOLM JACOBS, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:07cv19-MHT |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION

Plaintiffs Joel McClease, John Boddorf, and Malcolm
Jacobs bring this employment-discrimination lawsuit
against defendant Alabama Department of Corrections,
charging that they were discriminated on the basis of
their sex in the assignment of jobs at the department's
Staten Correctional Facility, in violation of Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C.
§§ 1981a, 2000e through 2000e-17. Jurisdiction is proper
under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil
rights), and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

This lawsuit is now before the court on the Corrections Department's motion for summary judgment. For the reasons that follow, summary judgment will be entered in favor of the department and against the plaintiffs.


## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine

2

issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II. FACTUAL BACKGROUND

The plaintiffs have extensive backgrounds of satisfactory service as correctional officers with the Department of Corrections.  McClease has been employed with the department since August 1989; he currently works the third shift (10:00 p.m. to 6:00 a.m) at the department's Staten Correctional Facility.  Boddorf retired from the department in May 2007, but had been

employed at Staten since December 1978; he worked primarily the first shift (6:00 a.m. to 2:00 p.m.). Finally, Jacobs has been employed with the department since 1985 and currently works the second shift (2:00 p.m. to 10:00 p.m.) at Staten. During the period of the alleged discrimination, male and female officers were assigned to all three shifts.[1]

During the period of the alleged discrimination, there were six dormitories, A, B, C, D, E, and G, a hospital, and guard towers at Staten; correctional officers were assigned to each of the dorms, the hospital and the guard towers. At the dorms, two officers were generally assigned; one was assigned to a cubicle and was designated as the dorm officer, and a second was assigned to the position of rover and had the responsibility of assisting the dorm officer. Dorms A, B, D, and G were general

---

1. On average, 30 male officers and two female officers worked the first shift, and 20 males and three to five females worked the third shift. The demographic breakdown of the second shift is not clear from the record, though it is undisputed that female officers worked the second shift. Corrections Department's Brief in Support of Summary Judgment (Doc. No. 19), Exhibit F.

population dormitories and, because they housed more inmates, were the more dangerous dorms; as a result, they required the most work and were most stressful for officers.

Dorm C, in contrast, was more docile because it housed inmates undergoing substance abuse treatment. Dorm E was the honor dorm and housed the best behaved inmates. The hospital had fewer inmates and thus was more docile than other areas. Finally, because the guard towers provided no contact with inmates and essentially required only vigilance, assignments there posed much less danger to and required less work for officers than did assignment to other areas.

On or about October 17, 2005, McClease filed a formal grievance with the Department of Corrections complaining that female officers were almost never assigned to Dorms A, B, D, and G.[2] On or about February 16, 2006, the department resolved the grievance in McClease's favor finding that there had been an impermissible difference in

_____

2. <u>Id</u>., Exhibit B.

the assignment of females, and the department mandated that all posts be assigned regardless of gender.[3]

Sometime after October 2005, Boddorf complained to his supervisor, Lieutenant Copeland, that some employees worked certain dorms and others did not; Boddorf, however, never filed a grievance with the Corrections Department. During this same period, Jacobs complained to his direct supervisors, Eddie Browning and Richard Golden, as well as Assistant Warden Thomas, that the same individuals were working the same hostile areas on a constant basis; Jacobs, however, also never filed a grievance with the Corrections Department.

On April 3, 2006, Mclease filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), asserting that he was being discriminated against on the basis of his sex.[4] On January 4, 2007, more than 180 days after filing the EEOC charge of discrimination, McClease filed this lawsuit. Neither

---

3. _Id_., Exhibit C.

4. _Id_., Exhibit A.

Boddorf nor Jacobs filed complaints with the EEOC; however they joined the suit when McClease filed an amended complaint in this court on March 31, 2007.

The Corrections Department moved for summary judgment on July 31, 2007.

### III. DISCUSSION

#### A.  Single-Filing Rule

The Department of Corrections first contends that Jacobs and Boddorf should not be allowed to join this suit on the basis of the single-filing, or "piggy-back," rule.

It is clearly established that "[t]he timely filing of an EEOC charge is a prerequisite to a Title VII suit." Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 449 (11th Cir. 1993).  Because Boddorf and Jacobs did not file a charge of discrimination with the EEOC, they rely on the single-filing rule to join McClease's lawsuit.  According to the single-filing rule, in certain instances "plaintiff[s] who [have] not filed an EEOC charge [are permitted to] rely on another plaintiff's charge."   Id.

7

Two requirements must be met in order for the single-filing rule to apply: "(1) the charge being relied upon must be timely and not otherwise defective; and (2) the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." Id.

The Corrections Department maintains that Boddorf and Jacobs should not be allowed to piggyback onto McClease's EEOC charge on the basis of the single-filing rule because they joined this lawsuit after McClease had already filed the original complaint. It is not clear to this court why it should matter that the additional plaintiffs joined through an amended complaint as opposed to filing an original complaint. The Eleventh Circuit has explained that the "principle behind the piggybacking rule is to give effect to the remedial purposes of [Title VII] and to not exclude otherwise suitable plaintiffs from a [Title VII action] simply because they have not performed the useless act of filing a charge." Grayson v. K Mart Corp., 79 F.3d 1086, 1103 (11th Cir. 1996). Therefore, Boddorf

8

and Jacobs, if found otherwise suitable, should not be excluded from this action simply because they joined in the amended, as opposed to original, complaint.

Alternatively, the department contends that Boddorf and Jacobs have not met the requirements of the single-filing rule because they have not been subjected to allegedly discriminatory treatment similar to that allegedly suffered by McClease. In particular, the department focuses on the fact that Boddorf and Jacobs worked different shifts from those worked by McClease and that their shifts had some different duty-post assignments and different compositions of male and female officers.[5] These distinctions are insignificant.

---

5. The Corrections Department also states that McClease was the only officer to complain in his deposition about female officers receiving more favorable employment evaluations. Id., Exhibit F, McClease Deposition. Both Boddorf and Jacobs deny knowing whether female officers received more favorable evaluations than males. Id., Boddorf and Jacobs Deposition. However, this allegation has not been set forth in the complaint and is therefore not relevant to the issue of whether Boddorf and Jacobs have been subjected to similarly discriminatory treatment and thus should be able to piggyback onto McClease's EEOC charge.

The discriminatory treatment that each of the officers complain about is that males are being disproportionately assigned to the more dangerous dorms than are females. The factual contexts that are the bases of the officers' complaints are similar. In particular, female officers have been employed in each of the three shifts that the plaintiffs worked. During these three shifts, shift supervisors assigned officers to dorms, including the allegedly more dangerous dorms, and there is no evidence that the stress experienced from working in these allegedly more dangerous dorms varied by shift. Therefore, the individual claim of McClease and those of Boddorf and Jacobs arise out of similar discriminatory treatment and, as a result, the single-filing rule can be applied in this case.

## B.  Title VII

The Department of Corrections next contends that the plaintiffs have not raised a genuine issue of material fact on their Title VII claim sufficient to withstand

summary judgment in the department's favor. It is unlawful under Title VII for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). Job assignments are a term, condition, or privilege of employment. Ferrill v. Parker Group, Inc., 168 F.3d 468, 473 (11th Cir. 1999).

This case is governed by the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas approach, an employee has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. Id. at 802; Damon v. Fleming Supermkts of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). If the employee establishes a prima-facie case, the burden then shifts to the employer to rebut the presumption by articulating legitimate and non-discriminatory reasons for

its employment action.  Chapman v. AI Transport, 229 F.3d
1012, 1024 (11th Cir. 2000).  The employer has the burden
of production, not of persuasion, and thus does not have
to persuade a court that it was actually motivated by the
reasons advanced.  See, e.g., Texas Dep't of Cmty. Affairs
v. Burdine, 450 U.S. 248, 253-55, 258 (1981); McDonnell
Douglas, 411 U.S. at 802.

Once the employer satisfies this burden of production,
"the presumption of discrimination is eliminated and the
[employee] has the opportunity to come forward with
evidence, including the previously produced evidence
establishing a prima facie case, sufficient to permit a
reasonable factfinder to conclude that the reasons given
by the employer were not the real reasons for the adverse
employment decision." Chapman, 229 F.3d at 1024 (citation
and internal quotation marks omitted).  The employee may
meet this burden by persuading the court that a
discriminatory reason more than likely motivated the
employer or by demonstrating that the proffered reasons

for the employment decision are not worthy of belief. <u>Burdine</u>, 450 U.S. at 256.

## 1.  Prima-Facie Case

The Department of Corrections first argues that the plaintiffs have not come forward with evidence to support a prima-facie case of sex discrimination in the assignment of jobs. To establish a prima-facie case of discriminatory job assignment, a plaintiff must show that: "(1) he belongs to a [protected class]; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). As a general rule, "demonstrating a prima facie case is not onerous."  <u>Id</u>.  A plaintiff need only "produce sufficient evidence to support an inference that the defendant employer based its employment decision on illegal criterion." <u>Alphin v. Sears, Roebuck & Co.</u>, 940 F.2d 1497, 1500 (11th Cir. 1991).

13

The parties do not dispute that, as males, the plaintiffs belong to a protected class. See Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1102-03 (11th Cir. 2001) (groups that have not been historically subjected to discrimination are still a protected class under Title VII). In addition, the parties do not dispute that females and males were qualified to serve in all posts in the correctional facility. The dispute centers around whether the plaintiffs have come forward with sufficient evidence to survive summary judgment on the second requirement of demonstrating that they were subjected to an adverse-job action and the fourth requirement of showing that the Corrections Department treated similarly situated female correctional officers more favorably.

The plaintiffs contend that the assignment of male correctional officers to the more dangerous dorms constitutes an adverse-job action. The department first challenges the contention that assignments to Dorms A, B, D, and G are more dangerous than other duty-post

14

assignments.   Each of the plaintiffs in their sworn
depositions stated, based on their experience, that
assignments to these dorms are more dangerous than
assignments to other postings.   This evidence is
sufficient to survive summary judgment on whether these
dorms are more dangerous.

However, even assuming that Dorms A, B, D, and G are
more dangerous, the plaintiffs have to show that
assignment to more dangerous dorms is an adverse-job
action.  To demonstrate that an assignment constitutes an
adverse-job action, an employee must show "a serious and
material change in the terms, conditions, or privileges of
employment.   The employee's subjective view of the
significance and adversity of the employer's action is not
controlling; the employment action must be materially
adverse as viewed by a reasonable person in the
circumstances."   Davis v. Town of Lake Park, 245 F.3d
1232, 1239 (11th Cir. 2001).  While the Eleventh Circuit
in Davis expressed caution about finding job assignments
to be an adverse-job action, it explicitly does not

"suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the terms, conditions, or privileges of employment." Id. at 1244-45.

The plaintiffs in their depositions stated that being assigned to the more dangerous dorms causes greater stress and that this greater stress was having a detrimental effect on their health. A reasonable person in the plaintiffs' circumstances could view the job assignment as materially adverse because the potential long-term effect of the greater stress on the health of the plaintiffs is a diminution in their ability to work and thus to their long-term earning potential. Therefore, if a factfinder were to find the plaintiffs' assertions to be true, assigning them because of their sex to more stressful duties could qualify as one of those unusual instances of a job assignment that is so substantial and material as to alter the terms, conditions, or privileges of employment.

The Corrections Department also argues that the

plaintiffs have failed to produce sufficient evidence that females were not assigned to the more dangerous dorms in proportion to their numbers.  The department produced evidence of assignment logs showing that women worked a proportionate number of shifts in the more dangerous dorms.  However, each of the plaintiffs, in their sworn depositions, state that the logs are erroneous and that, based on their observations, women did not always work the shifts described in the assignment logs.  In addition, the plaintiffs have produced deposition testimony of Warden Leon Forniss stating that the assignment logs reflect only where officers were initially assigned and that not all of the information is correct as to where the officers actually worked.[6]  This evidence is sufficient to raise a genuine issue of material fact to survive summary judgment on the question of the actual assignment of female officers.

---

6.  Plaintiffs' Response to Motion for Summary Judgment, Forniss Deposition (Doc. No. 27), Exhibit 4.

Given the general rule that establishing a prima-facie case is not onerous, this court finds that the plaintiffs have presented sufficient evidence to establish a prima-facie case of discrimination to survive summary judgment.

### 2.  Legitimate, Non-discriminatory Reason

Since the plaintiffs have established a prima-facie case of discriminatory job assignments, the burden of production shifts to the Corrections Department to rebut the presumption by articulating legitimate, non-discriminatory reasons for its disproportionate assignment of male officers to the more dangerous dorms.  The department explains, on the basis of affidavits of shift supervisors responsible for assigning the correctional officers, that the shift assignments are based on putting at a particular post the best officer who has the experience and ability to control that post.[7]

_____

7.  Corrections Department's Brief in Support of Summary Judgment (Doc. No. 19), Exhibit G, Levan Thomas, Willie Copeland, Eddie Browning, and Billy Pittman affidavits.

18

Proportionately more men were assigned to the more dangerous dorms, according to the Corrections Department, only because proportionately more men were better qualified for the assignments. This court finds that the department has met its burden of production.


### 3.  Pretext

At the final stage of the McConnell Douglas burden shifting framework, the burden shifts back to the plaintiffs who must "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were pretext for discrimination." Vessels v. Atlanta Independent School System, 408 F.3d 763, 771 (11th Cir. 2005).

In addition to evidence supporting their prima-facie case, the plaintiffs rely on the Corrections Department's resolution of the October 2005 grievance to support their contention that the reason articulated by the department --proportionately more men were assigned to the more

dangerous dorms only because proportionately more men were better qualified for the assignments--is mere pretext for discrimination.  As discussed above, the department found in February 2006 that there had been discrimination in job assignments and resolved that "[a]ll posts will be rotated, regardless of gender."  The department's findings of fact and decision regarding McClease's grievance were based on conduct before October 2005.  The present lawsuit is based on allegedly discriminatory conduct that occurred since October 2005.  While the resolution of the grievance does demonstrate that the department had a history of discriminatory job assignments, it does not show that there has been ongoing discrimination at the department since October 2005 and therefore does not, by itself, demonstrate pretext.

The plaintiffs have also come forward with a deposition of Warden Leon Forniss who, after examining the October 2006 Personal Rotation Chart, stated that there was not an equitable distribution of job assignments on

the basis of sex.[8]   However, Forniss also stated that
officers are assigned on the basis of their demonstrated
experience and ability to control their environment, a
position consistent with that articulated by the
department.   Thus, the deposition testimony of Forniss
only confirms the observations of the plaintiffs that men
were disproportionately assigned to the more dangerous
dorms, but does not undermine the department's articulated
reason for the disproportionate assignment: the men so
assigned were better qualified for the assignment.   And
the plaintiffs have failed to present any relevant and
sufficiently reliable evidence regarding the comparative
qualifications of male and female officers to serve in the
more dangerous dorms, and, in particular, they have failed
to put forward such evidence to show that, when they were
assigned to these dorms, more qualified females were not.

Indeed, the assignment of Yvonne Ray, a female
correctional officer at Staten, is further evidence in

---

8.   Plaintiffs' Response to Motion for Summary
Judgment (Doc. No. 27), Exhibit 4.

support of the Corrections Department's explanation that it assigned solely on the basis of demonstrated experience and ability to control the environment. According to the plaintiffs' own deposition testimony, for several months in 2005 and 2006, Ray was assigned to be a dorm officer or dorm rover in Dorm G, one of the more dangerous dorms, and, according to the department, this was only because she was the best qualified.[9]

This court therefore concludes that the evidence is not sufficient to support a finding that the department's articulated reason is unworthy of belief and thus is a pretext for sex discrimination, or otherwise a finding that sex discrimination more than likely motivated the Department of Corrections in the assignment of correctional officers.

***

---

9. Corrections Department's Brief in Support of Summary Judgment (Doc. No. 19), Exhibit F, Jacob's deposition at 78, Boddorf's deposition at 119.

For the foregoing reasons, the Corrections Department's motion for summary judgment will be granted on the plaintiffs' Title VII claim.

An appropriate judgment will be entered.

DONE, this the 25th day of October, 2007.

_/s/ Myron H. Thompson_
**UNITED STATES DISTRICT JUDGE**