IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JOEL McCLEASE, | ) | |
| JOHN BODDORF, and | ) | |
| MALCOLM JACOBS, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:07cv19-MHT |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION AND ORDER

Plaintiffs Joel McClease, John Boddorf, and Malcolm
Jacobs have filed a motion to alter, amend, or vacate the
summary judgment entered on October 25, 2007, in favor of
defendant Alabama Department of Corrections on their
federal claim of sex-based employment discrimination,
brought under Title VII of the Civil Rights Act of 1964,
as amended, 42 U.S.C. §§ 1981a, 2000e to 2000e-17.
McClease v. Alabama Dep't of Corrections, 2007 WL 3124453
(M.D. Ala. Oct. 25, 2007) (Thompson, J.).  For the

reasons that follow, the plaintiffs' motion will be denied.

## I.

This court granted summary judgment in favor of the corrections department because the plaintiffs failed to come forward with sufficient evidence that the department's legitimate, nondiscriminatory reason for the disproportionate assignment of more male officers than female officers to the more dangerous dorms at Staton Correctional Facility was mere pretext for sex discrimination. The reason the department had offered was that "shift assignments are based on putting at a particular post the best officer who has the experience and ability to control that post," McClease, 2007 WL 3124453 at *6, and "more men were assigned to the more dangerous dorms ... only because ... more men were better qualified for the assignments." Id.

In their motion, the plaintiffs assert that this court incorrectly found that the corrections department set forth, with sufficient specificity, a legitimate, non-discriminatory reason for disproportionately assigning male correctional officers to the more dangerous dorms; the plaintiffs contend that, because of this failing on the department's part, they did not need to demonstrate pretext in order to survive summary judgment. Alternatively, the plaintiffs argue that this court failed to give sufficient consideration to their contention that the disproportionate assignment of male correctional officers to the more dangerous dorms violated the policies of the corrections department, a violation which they contend is evidence of discrimination.

## II.

The plaintiffs do not specify the basis, in the Federal Rules of Civil Procedure, for the relief sought.

3

Therefore, the court will construe the plaintiffs' motion as seeking relief under Rule 59(e) of the Federal Rules of Civil Procedure. Rule 59(e) provides that, "A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." The Eleventh Circuit Court of Appeals has stated that, "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted). Rule 59(e) may not be used to relitigate old matters or to present arguments or evidence that could have been raised prior to judgment. O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992). Because the timeliness of the plaintiffs' motion is not in dispute, the court goes directly to whether the plaintiffs have asserted legally proper grounds for relief.

The plaintiffs contend that the court committed legal and factual errors. No such errors have been found.

4

First, the legitimate, non-discriminatory reason proffered by the corrections department was stated with sufficient specificity. Second, the evidence does not support the conclusion that the corrections department violated its own policy on the assignment of correctional officers.

Legitimate, Non-Discriminatory Reason: In its summary-judgment opinion, this court, as a part of its burden-shifting analysis pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), found that the plaintiffs had presented sufficient evidence to establish a prima-facie case of discrimination. The court then addressed whether the corrections department met its burden to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its disproportionate assignment of male officers to the more dangerous dorms.

In its summary-judgment briefs to this court, the department explained, as stated earlier, that the shift

assignments were based on the policy of placing the best officer at a particular post based on that officer's demonstrated experience and ability to control that post, and disproportionately more men were assigned to the more dangerous dorms only because disproportionately more men were better qualified for those assignments. On the basis of this explanation, the court found that the department had met its burden of production. The plaintiffs contest this finding in their motion. They argue that the department did not explain its reason with enough specificity to afford them a full and fair opportunity to demonstrate pretext. The court disagrees.

The United States Supreme Court has explained that "the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action." Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248, 257 (1981). The burden is not a heavy one as "the employer need only produce admissible evidence which would allow the trier of fact rationally

to conclude that the employment decision had not been motivated by discriminatory animus." Id. The Eleventh Circuit Court of Appeals has held that "a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason," Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000), but, when relying on a subjective reason, the employer has the onus to "articulate[] a clear and reasonably specific factual basis upon which it based its subjective opinion." Id.

The court in Chapman presented, as a hypothetical, a reason that would not meet the employer's burden of production. A statement by a supervisor that he "did not hire the plaintiff applicant simply because 'I did not like his appearance,'" without any further support, would not pass muster. Id. In order to meet the burden of production, the employer would have to provide explanations such as: "'I did not like his appearance because his hair was uncombed and he had dandruff all

over his shoulders,' or 'because he had his nose
pierced.'" <u>Id</u>.

   In <u>Chapman</u>, the employer stated that it did not hire
the plaintiff because of his poor interview skills.
While this reason was subjective, the employer also
offered "a clear and reasonably specific explanation" for
why the plaintiff had poor interview skills. <u>Id</u>. at
1035. One interviewer explained that the plaintiff

>    "was not very concise with the answers.
>    He did not take an aggressive approach
>    in asking me questions about the
>    position, where we were going. His
>    answers were not very sharp."

<u>Id</u>. A second interviewer explained that the plaintiff's
"imprecise answers were not 'the answers he would expect
[for the plaintiff] to be able to give to technicians
under his control, within his unit.'" <u>Id</u>. The second
interviewer was also concerned about the plaintiff's
unclear answers regarding his work history. <u>Id</u>. The
court concluded that, "[e]ven though [the interviewers]
subjectively evaluated [the plaintiff's] interview, they

also explained the grounds for their evaluation with reasonable clarity and specificity."  Id.

Other courts have explained that the justification for the requirement of reasonable specificity is to provide a plaintiff with a "full and fair opportunity to demonstrate pretext."  Alvarado v. Texas Rangers, 492 F.3d 605, 617 (5th Cir. 2007); see also EEOC v. Target Corp., 460 F.3d 946, 957 (7th Cir. 2006) (requiring that the employer "frame the dispute such that the [plaintiff] can respond to [the employer's] asserted reason with specific evidence that this reason was a pretext for a discriminatory motive").

The Fifth Circuit Court of Appeals explained that a statement (that plaintiff was not "sufficiently suited" for the position) lacked the necessary specificity to allow the plaintiff to prove pretext.  Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004).  However, the court added that, if the employer articulated that the plaintiff was not sufficiently suited "because of her

experience, credentials, attitude, or some other such articulable characteristic, the ... reason might have provided enough detail to enable [the plaintiff] to attempt to show pretext." Id.

While the employer is required to produce a reasonably specific reason for its action, it is important to remember that the employer does not have the burden of persuasion. These cases counsel that the court only ensure that there is sufficient specificity to afford the plaintiff an opportunity to demonstrate pretext.

Here, the correction department's proffered reason for the disproportionate assignment of male officers to the more dangerous dorms is set forth in more detail in the deposition of Staton Warden Leon Forniss and in the affidavits of Correctional Warden II Levan Thomas, and Correctional Supervisors Willie Copeland, Eddie Browning, and Billy Pittman. These statements, beyond what is quoted in the plaintiffs' motion, demonstrate that the

10

explanation for the disproportionate assignment was given with reasonable specificity.

Warden Forniss explained that correctional officers were assigned based on their demonstrated experience and ability to control their environment. In ordinary circumstances, where correctional facilities were adequately staffed, less experienced correctional officers were paired with more experienced ones so as to give the less experienced ones more experience in controlling more dangerous areas; under these circumstances, the corrections department did not have to assign officers based solely on who was the most experienced and most capable. However, as Warden Thomas and Supervisors Copeland, Browning, and Pittman explained, this case did not present ordinary circumstances.

Warden Thomas and the shift supervisors explained that the staffing level at Staton Correctional Facility was below the authorized number due to staffing shortages

11

throughout the department. As a result, shift supervisors were unable to pair less experienced officers with more experienced senior officers. Instead, as explained by Thomas, the assignment process worked as follows: shift supervisors ascertained the events of the day (medical transports, emergency transfers due to an enemy situation, and other unknown situations) that would be encountered in a particular shift; the supervisor then determined which officers would be best suited to be placed in each duty post based on that officer's past demonstrated ability to handle particular situations at that particular post. Copeland explained that if he had not placed the officer with the greatest ability to control inmates in particular areas, he would have run the risk of creating a security breach.

Browning identified an additional reason for the disproportionate assignment of male officers to the more dangerous dorms. He explained that, due to the low number of females on his shift and the fact that only

12

female correctional officers could pat down females coming into the correctional facility, a security weakness would have been created if the only female on the shift had been assigned to posts that were harder to control; for example, when female visitors entered the correctional facility, female officers assigned to more dangerous dorms would have had to leave their posts to search these visitors. Browning also reiterated the explanation offered by Copeland and Thomas that, in order to maintain security, it was extremely important to assign officers with enough demonstrated experience and ability to control the assigned post.

Finally, Pittman explained that the priority was security and whether the correctional officer could handle the assigned position. For that reason, he always took into consideration experience, demeanor, and abilities before assigning that officer to a particular post.

13

The common theme running through each of the affidavits is that, subject to the need of female officers to do searches of females, the shift supervisors assigned officers on the basis of demonstrated experience and ability to control the environment. This reason was specific enough to afford the plaintiffs a full and fair opportunity to demonstrate pretext. In particular, the plaintiffs could have offered specific evidence as to whether the corrections department did have a staff shortage; whether the male correctional officers assigned to the more dangerous areas were, in fact, more experienced and capable than the female officers not assigned; and how often, it at all, female officers were needed to conduct searches of female visitors. Also, as circumstantial evidence of whether the male officers assigned to the more dangerous areas did, indeed, have greater ability to control that environment, the plaintiffs could have offered, for example, specific evidence comparing the number of security breaches in

14

posts assigned to those officers with the number of
breaches in those same posts when assigned to female
officers.  Since the plaintiffs continue to bear the
burden of persuasion throughout the stages of the
McDonnell Douglas test, it was up to them, not the
employer, to come forward with this type of evidence, or
other relevant evidence, at the pretext stage.

   Violation of Institutional Policy:  The second
argument in support of the plaintiffs' motion is that the
court paid insufficient attention to their contention
that the assignment of posts within the prison violated
the corrections department's own assignment policy.  The
plaintiffs contend that such violation of a departmental
policy is evidence of discrimination.

   Specifically, the plaintiffs argue that, while the
court cited the Roy Hightower memorandum for the
proposition that "duty post assignments on all shifts at
Staton are to be without regard to gender," McClease,
2007 WL 3124453, at *2, that recitation left out what the

15

Hightower memorandum actually said, that is, that "all posts will be rotated, regardless of gender." Plaintiffs' Motion to Alter, Amend, or Vacate at 3 (doc. no. 35).   The plaintiffs maintain that "[t]he word 'rotate' means 'to proceed in sequence; alternate,'" "to perform a job or duty on a rotating basis," "to proceed in a fixed routine of succession." Id. (quoting American Heritage Dictionary, Second College Edition, WordNet 3.0, and Dictionary.com Unabridged).   This meant, the plaintiffs say, that assignments had to "proceed in sequence" without regard to any case-by-case determination of factors such as the ability of correctional officers to secure particular posts.   The plaintiffs maintain that this policy was violated by the disproportionate assignment of male correctional officers to the more dangerous posts, even if those assignments had been based on their demonstrated ability and past experience.   This, the plaintiffs contend, is evidence of discrimination.

16

The term rotate can mean "proceed in sequence." However, a much more plausible interpretation of the term rotate (indeed, the only reasonable definition when the term is considered in the context of an understaffed high-risk prison) is the one given by <u>Webster Third New International Dictionary</u> (2002), that is, "to exchange with personnel more comfortably situated." Therefore, the plaintiffs have not rebutted that the department, through its policy and subject to the need of female officers to search female visitors, sought to ensure the rotation of personnel to positions best suited to maintain security and control posts regardless of the gender of the correctional officer. That the result was the disproportionate assignment of men to the more dangerous dorms does not demonstrate that the policy was violated.

\* \* \*

17

Accordingly, it is ORDERED that the plaintiffs motion to alter, amend, or vacate (doc. no. 35) is denied.

DONE, this the 9th day of January, 2008.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE